HUNT and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*June 9 — June 22, 1899.*

*Criminal law: Burglary: Circumstantial evidence.*

1. About the time of the larceny of a box of clothing from a freight car, five men, including plaintiffs in error, ran from the vicinity of the car, one of whom carried a box similar to the one that was taken with the stolen clothes. The men disappeared in the cornfield near by. The next morning a similar empty box was found in the cornfield near where the men disappeared the evening before. Plaintiffs in error were interested in the disposition of the stolen property, and their character was consistent with the theory of guilt. *Held,* that the circumstances warranted an inference of guilt with the degree of certainty requisite to a conviction.

2. Where the evidence bearing directly on the fact of guilt is wholly circumstantial, but the circumstances point to the existence of facts constituting guilt so strongly as to leave no reasonable doubt but that they exist, a conviction should follow the same as if such facts were established, with like degree of certainty, by direct evidence.

ERROR to review judgments of the municipal court of Rock county: M. M. PHELPS, Judge. *Affirmed.*

Defendants were duly tried on a charge of burglariously entering in the night time a freight car, the property of the Chicago, Milwaukee & St. Paul Railway Company, with intent to commit the crime of larceny, and then and there stealing and carrying away eight suits of clothes, property of said corporation, and of the value of $77. The jury rendered a verdict of guilty on the first charge and the accused was sentenced to the state prison on such conviction. The commission of the crime was established by uncontroverted evidence. The evidence to connect plaintiffs in error with the offense is wholly circumstantial. The evidence tends to show that at about 10 o'clock at night of the day the crime was committed, three persons, all of whom testified in the case, were enjoying a keg of beer by the roadside near a

fence, inside of which was a cornfield, the location being near the place of the occurrence in question; that five men came running toward them in the cornfield, coming from the direction of the car that was broken into, one of whom had a box similar to the one taken from the car with the stolen clothes; that all of the five men except one, on seeing the witnesses, dropped down in the corn out of sight; that the one who did not disappear was plaintiff in error *Hunt;* that he approached the witnesses and inquired about beer, and then went back in the corn and disappeared; that such circumstances occurred while the train, containing the car that was broken into, was standing near; that the box in which the stolen goods were taken was found in the corn the next day near where the witnesses saw the five men; that plaintiffs in error belonged to a gang of idle men of the species called "tramps," who had been lurking in the neighborhood for some time; that the day after the offense was committed plaintiff in error *King,* in company with one Clarke, who had the stolen property, visited one Arquette, to whom Clarke sold the clothes for $40, $2 of which was paid down, *King* at the time appearing to be interested in the deal; that *Hunt* was near by, indicating that he was also interested; that thereafter Clarke visited Arquette several times for the purpose of collecting the balance of the money for the clothes, on which occasions one or both of plaintiffs in error accompanied him, taking part in the conversation between Clarke and Arquette about the subject of the former's visit, as if they were interested parties; that the last payment for the clothes was made in cigars and other things out of Arquette's store, both plaintiffs in error being present at the time and assisting in taking away the goods.

*Rufus B. Smith,* counsel, for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General,* and oral argument by *R. F. Hamilton,* second assistant attorney general.

Hunt and another vs. The State.

MARSHALL, J.   The only question raised is, Did the evidence warrant the verdict of guilty ?   The direct evidence of evidenciary facts was ample to warrant the jury in finding the following: About the time the crime was committed five men, including *King* and *Hunt*, ran from the vicinity of the car, one of whom carried a box similar to the one taken with the stolen clothes.   The men disappeared in a cornfield near by.   The morning after the occurrence an empty box was found not far from where the men disappeared on the evening before.   *King* and *Hunt* were interested in the disposition of the stolen property.   The character of the men was consistent with the theory of guilt. We are unable to say that such circumstances do not warrant an inference of guilt, and with the degree of certainty requisite to a conviction.   That is sufficient to prevent a reversal of the judgments.   Whether the evidence was susceptible of an inference of guilt inconsistent with any reasonable theory of innocence, was a judicial question.   The trial court properly decided that in the affirmative, properly leaving it to the jury to draw the proper inference; and there being credible evidence from which they had a right to decide as they did, such decision is conclusive of the guilt of the plaintiffs in error.   True, the evidence bearing directly on the fact of guilt was wholly circumstantial, but when circumstances point to the existence of facts constituting guilt so strongly as to leave no reasonable doubt but that they exist, a conviction should follow the same as if such facts were established with like degree of certainty by direct evidence.   There is no difference.   That is elementary.

*By the Court.*— The judgments are affirmed.